[Cite as *Nadin v. Cleveland Clinic Found.*, 2023-Ohio-529.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

DENISE NADIN,                         :

    Plaintiff-Appellant,          :

                                       No. 111638

    v.                            :

CLEVELAND CLINIC FOUNDATION,   :
ET AL.,

    Defendants-Appellees.         :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 23, 2023

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-20-933260

---

### *Appearances:*

The Eisen Law Firm Co., L.P.A., Todd E. Gurney, and
Brian N. Eisen, *for appellant*.

Bonezzi, Switzer, Polito & Hupp Co., L.P.A., Bret C. Perry,
Ronald A. Margolis, and Jason A. Paskan, *for appellees*
Cleveland Clinic Foundation and Steven Ball, M.D.

ANITA LASTER MAYS, A.J.:

## I.    Introduction and Background

{¶ 1}    Plaintiff-appellant Denise Nadin ("Nadin") appeals the trial court's judgment in favor of defendants-appellees Cleveland Clinic Foundation ("CCF") and Steven Ball, M.D. ("Dr. Ball") (collectively "appellees").  We affirm the trial court's judgment.

{¶ 2}    This appeal arises from a medical negligence and wrongful death case filed by Nadin, as administrator of the estate of her deceased husband, Dale Nadin.  Dr. Ball was employed by appellee CCF.  Appellant offers that Dr. Ball's failure to refer the decedent to the emergency room to address sudden, temporary blindness in his left eye a short while after nasal surgery resulted in a stroke that led to his death.  Appellees counter that the jury found the applicable standard of care was not violated and did not reach the issue of proximate cause or damages.

## II.    Assignment of Error

{¶ 3}    Nadin's sole assigned error on appeal is that:

The trial court committed reversible error by applying the wrong legal standard to determine the validity of a challenge for cause of a potential juror.

## III.    Discussion

{¶ 4}    The foundational statute in this case is R.C. 2313.17 entitled, "[C]auses for challenge of persons called as jurors; examination under oath."

{¶ 5}    R.C. 2313.17(B) through 2313.17(D) address grounds and procedures to challenge a juror's qualifications.  It provides in parts pertinent to this case:

(B)  The following are good causes for challenge to any person called as a juror:

\* \* \*

> (9) That the person discloses by the person's answers that the person cannot be a fair and impartial juror or will not follow the law as given to the person by the court.
>
> (C) Each challenge listed in division (B) of this section shall be considered as a principal challenge, and its validity tried by the court.
>
> (D) In addition to the causes listed in division (B) of this section, any petit juror may be challenged on suspicion of prejudice against or partiality for either party, or for want of a competent knowledge of the English language, or other cause that may render the juror at the time an unsuitable juror. The validity of the challenge shall be determined by the court and be sustained if the court has any doubt as to the juror's being entirely unbiased.

*Id.*

{¶ 6}  "This court, along with others, has held that a ruling on a challenge to a juror for cause, pursuant to R.C. 2313.17(B)(9) or 2313.17(D), will not be overturned on appeal unless it appears that the trial court abused its discretion." (Citations omitted.) *Cordova v. Emergency Professional Servs.*, 2017-Ohio-7245, 96 N.E.3d 906, ¶ 20 (8th Dist.). When a court exercises its judgment in an unwarranted way over a matter upon which it has discretionary authority, the court has abused its discretion. *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 35. "'The concept of 'abuse of discretion' as the basis for determining 'error' of the trial court connotes the right to exercise a sound discretion.'" *Id.* at ¶ 37, quoting *Rohde v. Farmer*, 23 Ohio St.2d 82, 262 N.E.2d 685 (1970).  A trial court may also abuse its discretion where it ""applies the wrong

legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact.'"" *Musial Offices, Ltd. v. Cuyahoga Cty.*, 8th Dist. Cuyahoga No. 108810, 2021-Ohio-2325, ¶ 37, quoting *Ockunzzi v. Smith*, 8th Dist. Cuyahoga No. 102347, 2015-Ohio-2708, ¶ 9, quoting *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, 892 N.E.2d 454, ¶ 15 (8th Dist.).

{¶ 7} The focus of the case is prospective Juror No. 15 seated as Juror No. 8. For purposes of the pending issue, we refer to the juror as Juror No. 15. Nadin states the juror acknowledged bias, but the trial court denied Nadin's challenge. Nadin argues:

> [T]he trial court refused to apply the correct legal standard set forth in R.C. 2313.17 for determining the validity of a challenge for cause. Under the statute, a prospective juror should be excused for cause when that person discloses by the person's answers that the person cannot be a fair and impartial juror." R.C. 2313.17(B)(9). The statute further provides: "[A]ny petit juror may be challenged on suspicion of prejudice against or partiality for either party. * * * The validity of the challenge shall be determined by the court and be sustained if the court has *any doubt* as to the juror's being *entirely unbiased.*" R.C. 2313.17(D).

(Emphasis sic.) Appellant's brief, p. 2.

{¶ 8} Nadin had exhausted her three peremptory challenges and the juror remained on the jury. A six-to-two verdict was rendered for the defense. Juror No. 15 voted for the defense.

{¶ 9} Both parties provided excerpts of the juror's statements to support their position that the juror was or was not biased. However, the issue on appeal is whether the trial court applied the proper standard in reaching a decision that the

juror was not biased. Nadin argues the trial court erroneously used a "reasonable doubt" standard instead of "any doubt."

{¶ 10} The reference to the reasonable doubt standard took place during Nadin's preservation of an objection regarding a different prospective juror, Juror No. 6, after the trial court overruled the objection.[1] Distilled, Nadin moved to remove the juror for cause because the witness testified he would require evidence that is inadmissible "before he would be willing to find for our client in this case." (Tr. 229.) "[A]s a result, we would be starting out a little bit behind in this case if there is no such evidence. And he said that he would be unable to push that aside." *Id.* "And that was after the court had attempted to rehabilitate him, he said that he could not push it aside. He would need more evidence." *Id.*

{¶ 11} The defense responded that the testimony "was elicited in response to direct questioning by [Nadin] regarding character evidence and past actions, which are inadmissible, and injected simply to elicit a response from" the juror. (Tr. 229-230.) The defense also noted that the juror specifically said he could follow the law. In agreement, the court stated:

| | |
|---|---|
| Court: | You can't go back and forth like that. It's an invitation to get rid of somebody. I thought that he rehabilitated himself sufficiently. I do not think that he is going to be an unfair juror at all. |
| Plaintiff: | The question, of course, is whether there is any doubt about the juror being entirely unbiased. He said — |
| Court: | I never heard the issue being any doubt being entirely reliable. I never heard that law, any doubt. If we had any |

---

[1] That juror was removed upon a defense peremptory challenge.

doubt, if any doubt was the rule on anything, we could not get verdicts because there is always doubt. There is doubt in a criminal case with a higher burden of proof. It is not any doubt, it's reasonable doubt on the burden of proof.

Plaintiff: With all due respect, your Honor, [R.C.] 2313.17[D] specifically says, "The validity of the challenge shall be determined by the Court and be sustained if the Court has any doubt as to the juror's being entirely unbiased."

Court: Okay. And I do not. Okay.

Plaintiff: I wanted to make my record, and I appreciate the opportunity. Thank you, your Honor.

(Tr. 231-232.)

**{¶ 12}** Some of Juror No. 15's concerns were similar to those of Juror No. 6. The following discussion took place:

Court: What do you think about all these issues here? You don't have any medical background?

Juror No. 15: No medical background, no.

Court: Any issues that would — You heard the concerns of the attorneys that they brought up. Any of those apply to you?

Juror No. 15: No. Nothing specific.

Court: Will you prejudge the case in any way?

Juror No. 15: Probably.

Court: You said you're on one side or another to yourself?

Juror No. 15: I think just coming in I would be more on one side; but, obviously, the facts of the case could sway me. I would be willing to be completely fair.

Court:          That's fine.  Go ahead.  What side are you on if you are on the side?  What side would you lean to?  That's the term.

Juror No. 15:    The cynical part makes me lean more towards defense.

Court:          Okay.  Now, we're going to instruct you whatever your personal feelings are, you have to put them aside and follow the law if you take an oath to be a juror whether you agree or disagree with it.

                It may make somebody be put in a position where they have to make a decision that would put them opposed to their preferred feeling, whether it be for the Plaintiff or Defense.  Can you do that?

Juror No. 15:    Yes

Court:          Can you commit to being a fair juror and follow the law?

Juror No. 15:    Yes.

(Tr. 286-288.)

{¶ 13}  During a lengthy exchange with Nadin's counsel, Juror No. 15 added:

Mr. Eisen:      When did this feeling first come to you in this case?  As soon as you heard it was a medical negligence case?

Juror No. 15:    I think that plays into it.  Obviously, if somebody is upset, they bring a case.  But their emotions might be, because of the outcome, the negative outcome versus somebody actually doing something wrong.  I think that happens a lot, I would imagine.

Mr. Eisen:      I understand and appreciate it.  Without hearing any evidence, your initial thought is that's likely what is going on here possibly?

Juror No. 15:    That's where my brain goes.  It's how I'm wired.  I'm not making a judgment call.  I  would have to know all the facts.

Mr. Eisen:      Our concern, obviously, is, first of all, are we starting off a little behind with you?

Juror No. 15:  Sure.

Mr. Eisen:  As the evidence comes in, and you have to evaluate one expert's testimony which says something that maybe doesn't meet your expectations that this is a legitimate case, and somebody really did something wrong to cause the death.

Another expert says it's not. The Doctor did nothing wrong and, furthermore, it didn't cause any injury.

As you take that evidence in, given the way you're wired, I'm concerned you might resolve whatever [sic] in accordance with your prior wiring as opposed to calling it straight.

Do you see where my concern would come from?

Juror No. 15:  I do.

Mr. Eisen:  I'm concerned that, even though you would try your best to put it aside, that we're still starting off trying to convince you, and it would be hard for you to do. You can't really be certain that you can do it; is that fair? I don't want to put words in your mouth.

Juror No. 15:  I would go based on the facts. Once I hear things, I could easily flip.

Mr. Eisen:  My concern is as you weigh the evidence, a certain piece of evidence meets with your prior expectations, are you likely to give it more weight than a piece of evidence that doesn't meet your prior expectations? Make sense?

Juror No. 15:  It makes sense.

Mr. Eisen:  Is there a risk that it could happen?

Juror No. 15:  It would depend on the details.

Mr. Eisen:  If you were in a car crash case, would you feel the same way, or is it something about medical negligence rather than a car accident?

Juror No. 15:  It wouldn't matter.

Mr. Eisen: It's a general sort of — I think that I asked yesterday, what kind of people sue? Is it about that? Is it about people who sue in general as opposed to car crash, contract case, medical negligence case?

Juror No. 15: It's not about people who sue in general, I don't think.

Mr. Eisen: What is it about?

Juror No. 15: Just the dynamic of having an outcome that you don't like. I see what you are saying, and I think there's overlap, but it's not completely that. In some other instance I might lean Plaintiff.

Mr. Eisen: In a medical case, you lean Defense.

Juror No. 15: I don't have —

Mr. Eisen: We're alleging the Doctor made a mistake.

Juror No. 15: Yes.

Mr. Eisen: Though you would try your best to push it aside, you can't be certain it won't affect you in this case; is that fair?

Juror No. 15: I'm mostly certain it would not.

Mr. Eisen: Mostly certain. Now I'm back to that other question. On a scale from 1 to 100, are you 90 percent certain? Something less?

Juror No. 15: I think 90 is good.

Court: 90 what?

Mr. Eisen: 90 percent certain it won't affect him. Are there other issues? Are there other issues that have come up we talked about?

Juror No. 15: No. I have no medical history that would sway me one way or the other personally, nor do I know anybody who has been in a similar circumstance.

Mr. Eisen:   Have you ever been in a position where you could file a lawsuit for any reason?

Juror No. 15:   No.  Never been to court.

Mr. Eisen:   How about family and connections to The Cleveland Clinic?

Juror No. 15:   No.

Mr. Eisen:   Anything else other than what you have told us?

Juror No. 15:   No. I'm clean on everything else.  No issues. Just slight coming-in bias.

Mr. Eisen:   I appreciate that.  Thank you.

(Tr. 287-293.)

{¶ 14}  Subsequently, the juror and defense interacted:

Mr. Perry:   You understand during this jury selection whatever Mr. Eisen is saying, I'm saying, is really meaningless because you have not heard any evidence.

Juror No. 15:   Of course.

Mr. Perry:   I would imagine wanting to be a fair and impartial juror. Before you could even consider a bias, you need to hear what the evidence is; fair?

Juror No. 15:   Yes.

Mr. Perry:   You would want to know what the underlying facts are, what the medical issues are, what the experts have to say, and consider all of that information in reaching a fair and impartial decision; fair?

Juror No. 15:   Uh-huh.

Mr. Perry:   I assume that you can do that?

Juror No. 15: Yes.

Mr. Perry: I imagine we all bring our own biases and preconceived notions into the courtroom. I'm not saying that you are, but maybe you're a person that likes to exceed the speed limit from time to time and not real happy the police get you from time to time. You might have a bias for someone that's not always — that is being pulled over by the police as opposed to the police officer. But you can set that aside when you are considering the facts?

Juror No. 15: Sure.

Mr. Perry Same thing in this case. You need to hear all the evidence before making that decision.

Juror No. 15: Right. My bias is just time point now, not post hearing.

Mr. Perry: To be fair, simply because you heard the title of the case, but you have not read the substance of the case, you can't really judge the book by its cover?

Juror No. 15: Right.

Mr. Perry: I take it when Judge McGinty instructs you on the law, you are able to set aside sympathy, bias, past experience, and judge this case only on what comes from the witness stand, which is the testimony, and the exhibits that the Court gives you; is that fair?

Juror No. 15: Correct.

Mr. Perry: I don't have anything else, your Honor.

(Tr. 294-296.)

{¶ 15} Next,

Court: Okay. [Juror], let me ask you. If you take an oath to be a juror, will you follow the law regardless of your personal feelings of what the law ought to be?

Juror No. 15: Yes, I will.

* * *

Mr. Perry: We are satisfied with the jury.

Tr. 296-297.

{¶ 16} Nadin next stated her objections for the record:

Court:      Okay. The Court told the Plaintiff they could put their objection regarding the last juror and their challenge for cause on the record. Go ahead.

Mr. Eisen:  Thank you, your Honor.

Court:      I presume that's what you are talking about.

Mr. Eisen:  You're correct. Plaintiff would —

Court:      [Juror No. 15].

Mr. Eisen:  Juror No. 15. We object to him being on this jury for cause. This is a guy who came on the stand who listened to an entire day of voir dire, came in, and the first thing that he said —

Court:      Little louder.

Mr. Eisen:  — he had bias against us. He testified that he leans towards the defense, he would lean towards the defense in this case because of his cynical nature, and it is how he is wired. He also said that he was only 90 percent certain that he could push it aside.

            This is absolutely the type of juror who should be excused because there can be any doubt — the standard is any doubt about the jurors being entirely unbiased. The standard is whether there is any doubt about a juror being entirely unbiased.

            When a juror comes in and announces his bias, says it's part of his makeup, and then says he's only 90 percent certain that he can put it aside, it is our position that he needs to be stricken for cause. So we absolutely would have a tainted jury. Thank you.

Court:      Response?

Mr. Perry:  I believe [Juror No. 15] was asked, not knowing any evidence, any facts, other than just knowing this is a

medical negligence case, would he have a bias. He said, yes, there would be a slight bias.

He then clearly said once he hears the evidence and considers the medical facts, he could set aside any bias, preconceived notion, and reach a fair and impartial decision based on the instructions given by the Court.

Everyone that comes into this courtroom has some type of bias. And I'm certain Mr. Eisen would not have been offended by that juror if he said he would lean towards the Plaintiff simply because it was a medical negligence case.

Absent hearing any evidence, this juror clearly said that he would follow Judge McGinty's instructions of law, and there is absolutely no reason to exclude him.

Court:          All right. Thank you. You have made your record.

(Tr. 298-300.)

{¶ 17} This court considered R.C. 2313.17(B)(9) and 2313.17(D) in *Cordova*, 2017-Ohio-7245, 96 N.E.3d 906, ¶ 18. We confirmed that R.C. 2313.17(B)(9) permits dismissal for cause where "'the person discloses by the person's answers that the person cannot be fair and impartial or will not follow the law as given to the person by the court.'" *Id.* at ¶ 26, quoting *id.* By its terms, a challenge under the R.C. 2313.17(B) factors is deemed a principal challenge under R.C. 2313.17(C). The validity of a principal challenge is to be tried by the court. *Id.* at ¶ 26.

{¶ 18} Where a principal challenge is determined to be valid

"the court [must] dismiss the prospective juror, [and may] not rehabilitate or exercise discretion to seat the prospective juror upon the prospective juror's pledge of fairness[.]" *State v. Swift*, 9th Dist. Summit No. 27084, 2014-Ohio-4041, ¶ 4, citing *Hall v. Banc One Mgmt. Corp.*, 114 Ohio St. 3d 484, 2007-Ohio-4640, 873 N.E.2d 290. "[W]here a party establishes the existence of facts supporting a

> principal challenge, this finding 'result[s] in automatic disqualification,' and no rehabilitation of the potential juror can occur." *Hall* at ¶ 29.

*Cordova*, 2017-Ohio-7245, 96 N.E.3d 906, ¶ 27.

**{¶ 19}** Appellant argues that *Cordova* is distinguishable because the juror "never stated she could not be fair and impartial." Appellant's brief, p. 15, citing *Cordova* at ¶ 32. However, this court disagrees. The juror in the *Cordova* medical malpractice case was a physician with training and experience in the diagnosis and treatment of the medical issue involved. The juror said that her initial reaction to sitting on a malpractice case would be to sympathize with the physician. *Id.* at ¶ 11.

**{¶ 20}** Cordova's counsel queried whether the juror felt "that maybe this would be a hard case for you to sit on and be totally fair and impartial to both sides?" The doctor responded, "I think it would be hard. I would try. I would certainly try." *Id.* The juror confirmed that she would use the witness testimony to make a decision that was fair to both sides versus what she knew from her medical training. *Id.* at ¶ 12. Pivotal here, the juror did not say that she would not or could not follow the law or be fair and impartial. *Id.* at ¶ 39. "Rather, her answers proved the opposite and that she would 'certainly try' to do so, which is all we can ask of jurors." *Id.*

**{¶ 21}** "Legal precedent permits our consideration of all voir dire answers given by" Juror No. 15. *Cordova*, 2017-Ohio-7245, 96 N.E.3d 906, ¶ 38 (8th Dist.), citing *Westfall v. Aultman Hosp.*, 5th Dist. Stark No. 2015CA00223, 2017-Ohio-1250; *State v. Dye*, 8th Dist. Cuyahoga No. 103907, 2016-Ohio-8044. After a thorough review of the voir dire transcript, Juror No. 15's responses did not indicate

that he was unable to follow the law. Juror No. 15 said he would be completely fair and judge the case based on the evidence. *Cordova* at ¶ 39.

{¶ 22} To that end, Nadin has "failed to establish the existence of facts to support a valid principal challenge that" Juror No. 15 "would not be fair and impartial or would not follow the law as given by the trial court, which would have required the trial court to automatically excuse" Juror No. 15 "for cause." *Id*.

{¶ 23} Shifting to R.C. 2313.17(D), which provides in pertinent part:

> In addition to the causes listed in division (B) of this section, any petit juror may be challenged on suspicion of prejudice against or partiality for either party * * * or other cause that may render the juror at the time an unsuitable juror. The validity of the challenge shall be determined by the court and be sustained if the court has any doubt as to the juror being entirely unbiased.

*Id*.

{¶ 24} "The determination" of "[w]hether a juror is biased involves a judgment of credibility, the basis of which may not always be apparent from the record on appeal" thus "a reviewing court will defer to the trial judge who sees and hears the jury." *Cordova*, 2017-Ohio-7245, 96 N.E.3d 906, ¶ 43, citing *State v. Huertas*, 51 Ohio St.3d 22, 23, 553 N.E.2d 1058 (1990); *see also Berk v. Matthews*, 53 Ohio St.3d 161, 559 N.E.2d 1301 (1990).

{¶ 25} We reiterate that Nadin's contention is that the trial court applied the wrong legal standard and was required to sustain the challenge if the trial court "has any doubt as to the jury being entirely unbiased." R.C. 2313.17(D). Nadin discussed this standard with the trial court during voir dire of Juror No. 6. During

that exchange, the trial court stated that it had no doubt.  There is nothing in the record to support that the trial court no longer understood the standard as applied to Juror No. 15 or did not follow it.

{¶ 26} Based on a thorough review of the record, we do not find that the trial court erred and abused its discretion when it overruled Nadin's challenge to dismiss Juror No. 15 for cause under R.C. 2313.17(B)(9) or 2313.17(D).  We further do not find that the trial court applied an incorrect legal standard.

{¶ 27} The single assignment of error lacks merit.

IV.   Conclusion

{¶ 28} The trial court's judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, ADMINISTRATIVE JUDGE

SEAN C. GALLAGHER, J., CONCURS;
KATHLEEN ANN KEOUGH, J., DISSENTS WITH SEPARATE OPINION

KATHLEEN ANN KEOUGH, J., DISSENTING:

{¶ 29} I respectfully dissent. I would find that the trial court abused its discretion in its predetermination that Juror No. 15 could be fair and impartial when the juror expressly stated that he had a "slight coming-in bias" toward the appellee, that he was only "90 percent certain" he could be impartial, and that his "bias [was] just time point now." Granted, during the trial court's questioning of Juror No. 15 on whether he would be able to follow the law regardless of his personal feelings, the juror appeared to be rehabilitated or at least, stated he could be fair. The issue I have is with the trial court's predetermination of seating Juror No. 15 and the court's timing of allowing Nadin's counsel to make a challenge.

{¶ 30} Pursuant to R.C. 2313.17(B)(9) and (D), a prospective juror may be challenged for cause. I recognize that Juror No. 15 may not have exhibited sufficient bias for the court to removed him on the principal challenge in subsection (B)(9) — answers reveal that person cannot be fair or impartial or will not follow the law. Under R.C. 2313.17(D), however, Juror No. 15 could also have been "challenged on suspicion of prejudice against or partiality for either party." In my opinion, Juror No. 15's answers were sufficient enough to make this challenge and at least warrant consideration by the trial court before the trial court declared "we have a jury."

{¶ 31} Following voir dire questioning of Juror No. 15, the trial court stated that it was the appellee's turn for preemptory challenges. Nadin's counsel interjected and asked, "Your Honor, would this be the appropriate time?" The trial court "note[d] it and [we will] go on the record." The appellee chose not to use its

final preemptory challenge, stating that he "was satisfied with the jury." At that point, the trial court announced, "we have a jury."

{¶ 32} The trial court did not permit Nadin to make a "for cause" argument until after the trial court stated, "we have a jury." The trial court's statement indicates that it already predetermined that Nadin's challenge for cause would be denied. This is not the message that jurists should send to litigants. How does this predetermination assure a party that a fair and impartial jury has been selected, thus, promoting confidence in the judicial system?

{¶ 33} Moreover, even after Nadin made her challenge for cause, the trial court did not make any further statements about why it believed Juror No. 15's "coming-in" bias toward the defense was insufficient to garner removal. R.C. 2313.17(D) provides that the trial court shall determine the validity of a party's challenge regarding the juror's suitability and the challenge "be sustained if the court has any doubt as to the juror's being entirely unbiased." In this case, trial court did not make any subsequent determination on Nadin's challenge, or submit any justification supporting its prior determination.

{¶ 34} What influence this juror may have had on the remaining jury pool is unknown. But the jury rendered a split verdict of six to two for the defense, with Juror No. 15 voting in favor of the defense. With the juror's admitted "coming-in" bias toward the defense, this verdict cannot go unnoticed because without his vote, the verdict would not have met the Civ.R. 48 three-fourths majority verdict. *See, e.g., Burton v. Unifirst Corp.*, 2013-Ohio-2330, 993 N.E.2d 440, ¶ 13 (8th Dist.)

(untruthful seated juror who voted in favor of prevailing party on a split verdict could have influenced other jurors).

{¶ 35} This is not a case where voir dire was extensive or the jury pool was limited. In my opinion, when a juror openly expresses some preconceived bias for or against one of the parties in a case, it is best to err on the side of caution, or at least allow the party to make its challenge prior to making a determination whether a juror should remain on a jury. For these reasons, I respectfully dissent.